### *NELSON & AL.* vs. *MORGAN.*

Agent disobeying orders, not liable for the whole value of the thing, but only for the injury sustained.

THE plaintiffs, at New-York, had consigned to the defendant, at New-Orleans, seven pipes of Madeira wine, to be sold at a limited price, but the defendant, after keeping them a long time upon hand, without being able to procure this price, reshipped them, without other directions, to the

plaintiffs, at New-York, who received them, under protest, and wrote him, that they had abandoned them, and held them merely as his property and subject to his orders. They were, however, af- terwards sold by them, at auction, at New-York, though at a price inferior to that at which they had limited their sale at New-Orleans, and the proceeds of the sale retained in their hands ; of which fact, they gave no information to the defendant. The object of the suit, was to recover damages for the deviation from the plaintiffs' order.

*Livingston*, for the plaintiffs. The measure of damages ought to be the amount of the whole sub-ject. Look at the facts in this case ; this parcel of wine was sent here, for the purpose of being sold at a limited price, and the proceeds remitted to the plaintiffs at New-York ; and no proof is exhibited to shew that the original instructions of the defen-dant had been countermanded, or his discretion, as an agent, enlarged. However well intended or meritorious, then, may have been his motives in the reshipment, it was, notwithstanding, a depar-ture from his instructions, and he has thereby ren-dered himself liable in damages to his principals. And, though a degree of discretion is necessarily vested in a factor or agent, yet this step far tran-scended its limits ; and it never could seriously have been made a question, whether an agent thus

I i

SPRING 1812.
I. District.

NELSON &
AL.
vs.
MORGAN.

situated, had not made himself answerable for so palpable a violation of his orders. The only question now is, how far he has become thus liable, and what is to be the rule by which the damages are to be measured. This will depend upon the nature and extent of the breach of instructions on the part of the agent. If the act proved upon him, has been only a partial violation of them, and but part of the subject affected by such violation, he is to answer only partially in damages, and not to be mulcted beyond the amount so affected; but if, on the contrary, the violation be such as to affect the whole subject, he is answerable in damages for the whole amount. In the present case, the breach of instructions was not a partial, but a general one; it extended to the whole subject; it involved the whole consignment; of course, then, we look to its whole value as the measure of damages, viz: the value of the wines at the price at which the defendant was authorised to sell them. Indeed, no other criterion of damages can well be found, or safely be acted upon; and this has been adopted, I think, invariably. It has been fully and recently recognised, in the celebrated case of *Le Guen* vs. *Governeur & Kemble*, 1 *John. Rep.* 466. You will also see the same principles laid down in the case of *Walker* vs. *Smith*, 4 *Dallas*, 390. and in *Bay's Rep.* 169. It will probably be

objected, that this parcel of wine was afterwards
received by the plaintiffs at New-York, and by
them sold; and that, in this manner, they are at-
tempting to be paid for it twice over. But it must
be recollected, in what manner it was received
by them, and for whom sold. It was received
under a protest, which they lost no time in com-
municating to the defendant, at the same time for-
mally abandoning the wine; the defendant, by
the reshipment, made it his own; and if the plain-
tiffs now hold the wine, or, if sold, the proceeds
of sale, it is as his agents and subject to his or-
ders. They have no further interest in it; to
them it has been totally lost; and if any hardship
be supposed to exist in this case, it is one of the
defendant's own making, and he must submit to
the inconveniences he himself has produced.

*Ellery*, for the defendant. There are many
cases, in which an agent or factor must necessarily
exercise a discretion, though his duty be *generally*
to follow the instructions of his principal; this
discretion, in the present case, has been fairly as-
sumed and impartially exercised; the defendant,
in the reshipment of the wines, has pursued the
interest of his principal at his own expence: to
the loss of storage, had the wines remained upon
hand; and of commissions, could they have been
sold in this city. And I think, if an opportunity

Spring 1812.
I. District.

Nelson & AL.
*vs.*
Morgan.

be given, it will be shewn he did not exceed the limits of a sound discretion—that he rather acted *without* orders, than *against* orders; and rather anticipated the instructions he expected to receive, than violated those he had received. But supposing, on his side, such a departure from his instructions, as to subject him to an action of damages, has not the jury been in an error, in relation to the rule by which they have been measured? and are the plaintiffs entitled to a verdict, as they claim, for the whole amount of these wines, although they have afterwards been received back and sold by the plaintiffs, and the proceeds put in their pockets? There are cases, undoubtedly, where the whole amount of the article may constitute the criterion of damages; but can it fairly be resorted to upon this occasion, and under the present circumstances? In the cases relied upon by the counsel of the plaintiffs, the breach of instructions not only extended to the whole subject, but involved in it the loss of the whole property. In the case of *Le Guen* vs. *Governeur and Kemble*, the defendants assumed an absolute control over the property, and converted it completely to their own use; the only compensation, then, commensurate with the damage actually sustained by the plaintiff, was the amount of the whole subject thus completely lost him. The

same will apply to the other cases cited, where the
loss was a total one, or the whole property put completely out of the reach and possession of the
plaintiffs. But in our case, the whole subject was preserved entire and safely placed in the hands of the plaintiffs; the wines, though at first received by them under protest, and with a threat of abandonment, were afterwards by them sold in their own names and upon their own account; and, although three years have since nearly elapsed, it does not appear that the defendant was even apprised of this sale, or was ever furnished with any account, or credited for the proceeds. Can they now conscientiously demand the full price of the wines *here*, after having sold and received the full price of them *there?* Are they entitled to the benefits of two markets, and a double sale? If, on the reshipment, the wines had perished, then might the gentleman's rule apply with more force; and with more propriety might he urge that, by this act, we had made them our own, and that we had reshipped them at our own risk, and had become the insurers; but after their safe arrival, reception, and sale, the rule and the objection come too late. As well might the insured come upon the underwriter for a total loss, after the safe arrival of the insured property. But, it is further said the plaintiffs had a right to abandon, and by thus rendering it a total loss, make the breach of in-

SPRING 1812.
I. District.

NELSON &
AL.
*vs.*
MORGAN.

structions extend to the whole subject. Suppose they actually possessed this right, and had even taken the proper steps to secure the exercise of it, have they not retraced them, and by their subsequent conduct completely waved it ? By whose instructions, and in whose name, and upon whose account, I again ask, were those wines sold at New-York ? Who has disposed of the proceeds, and benefited by the sale ? Not the defendant, who has but recently and accidentally come to the knowledge of this fact; but the plaintiffs, who concealed, or at least never communicated it ; and the utmost the defendant can be liable for, is the difference of price, and the expences of reshipment. Supposing these wines had sold at a superior price at New-York, according to the reasoning relied upon, the agent would be liable in damages for the profits secured to his constituent.

*By the Court.* The measure of damages, in this case, ought to be the value of the wine, at the highest market price in this city, at any time till the beginning of the suit, adding thereto the freight to New-York, and deducting therefrom the value of the wine at New-York, when the plaintiffs received it.

DAMAGES are always to be measured by the degree of injury which the party sustained, except in some cases when the defendant has been guilty

of gross fraud or misconduct ; then vindictive da-
mages are sometimes given by the jury.  In this
case, no ill intention can be imputed to the defen-
dant : it is therefore enough, if the plaintiffs be
made whole ; they are not to be enriched at the
expence of the defendant, *neminem oportet alte-*
*rius damno locupletari.*  The value which the
plaintiffs put on their goods, is not to be recog-
nised by the jury, unless evidence of its correct-
ness be administered to them.  The correct value
cannot be more than the highest price, in the mar-
ket, which the plaintiffs had selected, as the best
for the sale of his goods.  It is clear that if any
individual, by any improper act of his, unmixed
with fraud, had occasioned the destruction of the
wines, we should have directed the jury to value
them at the market price.